## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL SCOTT NELSON**                    **CIVIL ACTION**

**VERSUS**                                  **NO.  13-4998**

**BURL CAIN, WARDEN**                       **SECTION "N"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.      Factual Background

The petitioner, Michael Scott Nelson ("Nelson"), is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On December 10, 2008, Nelson was charged by Bill of Information in St. Tammany Parish with one count of simple burglary of an automobile.[3]  Nelson entered a plea of not guilty to the charges on January 8, 2009.[4]

The record reflects that, on October 27, 2008, Nelson drove his girlfriend, Candie Thomas, to a doctor's appointment at Northshore Regional Medical Center ("Northshore") in Covington,

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 1.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 12/10/08.

[4]St. Rec. Vol. 1 of 4, Minute Entry, 1/8/09.

Louisiana.[5]  The license plate number of his car was "RGJ 711."  Nelson had a long screwdriver and white gloves in his car which he used to do "tree work" when he worked with his brother approximately five days per month.

At 4:00 p.m. that same day, Sharon Shea also arrived at Northshore for a medical appointment.  She was driving a 2003 Honda CRV, which was equipped with a car alarm.  She had a bag containing her lunch as well as other items in the car.

When Thomas returned to Nelson's car following her appointment, she argued with Nelson because he "was attempting or wanting to break into a vehicle."  Thomas demanded that Nelson take her home, but he refused.  Instead, he broke into the car he had been eyeing by breaking the front-passenger side window.  Nelson returned to his car with his screwdriver and a "make-up" bag containing "a lunch."  After driving off, he threw the bag out of the window.

In the meantime, David J. Delahoussey, who was at Northshore for out-patient surgery that day, exited the facility at the same time as Nelson's break-in.  Delahoussey heard glass breaking and a vehicle alarm sound.  He saw a man pulling his arm out of the broken window of a Honda SUV.  The man got into another vehicle and drove away with a female passenger.  Delahoussey memorized the license plate number of the fleeing vehicle as "RGJ 711," and subsequently provided it to the police.

When Shea returned to her Honda CRV, the passenger-side door had been damaged, and the window had been shattered.  She subsequently spent approximately $210.00 to repair the damages.

---

[5]The facts were taken from the unreported opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Nelson*, No. 2010-KA-0997, 2010 WL 5442002, at *1 (La. App. 1st Cir. Dec. 22, 2010); St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2010-KA-0997, pp. 3-4, 12/22/10.

Nelson was tried before a jury on September 21 and 22, 2009, and was unanimously found guilty as charged.[6]  The State subsequently filed a multiple offender bill to which Nelson entered a plea of not guilty.[7]  At a hearing held on November 4, 2009, the Trial Court denied Nelson's motions for new trial, for post-verdict judgment of acquittal, and for arrest of judgment.[8]

On December 10, 2009, the Court sentenced Nelson to serve ten (10) years in prison at hard labor.[9]  After concluding the evidence and argument on the multiple bill received on November 4, 2009, and December 10, 2009, the Court adjudicated Nelson to be a fourth felony offender.[10]  The Court vacated the original sentence and sentenced Nelson as a multiple offender to serve life in prison at hard labor without benefit of parole, probation, or suspension of sentence.[11]  The Court also denied Nelson's motions to quash the multiple bill and to reconsider the sentence.[12]

On direct appeal, Nelson's appointed counsel asserted two errors:[13] (1) the Trial Court erred in denying the defense's motion for mistrial; and (2) the Trial Court imposed an excessive sentence. The Louisiana First Circuit affirmed Nelson's conviction, habitual offender adjudication, and

---

[6]St. Rec. Vol. 1 of 4, Trial Minutes, 9/21/09; Trial Minutes, 9/28/10; Trial Transcript, 9/27/10; St. Rec. Vol. 2 of 4, Trial Transcript (continued) 9/27/10; Trial Transcript, 9/28/10.

[7]St. Rec. Vol. 1 of 4, Minute Entry, 10/13/09; Multiple Bill, 9/23/09.

[8]St. Rec. Vol. 1 of 4, Minute Entry, 11/4/09; Motion for New Trial, 10/6/09; Motion for Post-Verdict Judgment of Acquittal, 10/6/09; Motion in Arrest of Judgment, 10/6/09.  *See also*, Motion for New Trial (pro se), 10/12/09; Trial Court Order, undated.

[9]St. Rec. Vol. 1 of 4, Sentencing Minutes, 12/10/09; St. Rec. Vol. 2 of 4, Sentencing Hearing Transcript, 12/10/09.

[10]St. Rec. Vol. 1 of 4, Sentencing Minutes, 12/10/09; Minute Entry, 11/4/09; St. Rec. Vol. 2 of 4, Sentencing Hearing Transcript.

[11]St. Rec. Vol. 1 of 4, Sentencing Minutes, 12/10/09; St. Rec. Vol. 2 of 4, Sentencing Hearing Transcript.

[12]*Id.*; St. Rec. Vol. 1 of 4, Motion to Reconsider Sentence, 12/10/09; Motion to Reconsider Sentence, 1/7/10; Trial Court Order, 1/27/10.

[13]St. Rec. Vol. 3 of 4, Appeal Brief, 2010-KA-0997, 6/28/10.

sentence on December 22, 2010, finding no merit in the arguments raised and no other errors in the record.[14]

The Louisiana Supreme Court denied Nelson's related writ application without stated reasons on June 3, 2011.[15]  His convictions and sentences became final ninety (90) days later, on September 1, 2011, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On July 12, 2012, Nelson, through private counsel, filed a motion to correct his sentence challenging the propriety of the underlying offenses.[16]  Counsel also filed that same day an application for post-conviction relief in which he asserted the following grounds for relief:[17] (1) ineffectiveness of trial counsel for failure to investigate Thomas's medical background and failure to adequately represent him during the habitual offender proceeding; (2) the Trial Court abused its discretion for failing to appoint new counsel; (3) testimony of an unsworn witness violated Fifth and Fourteenth Amendments; and (4) his Fifth and Fourteenth Amendment rights were violated and the Trial Court abused its discretion in failing to grant a mistrial.

---

[14]*Nelson*, 2010 WL 5442002, at *1; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2010-KA-0997, 12/22/10.

[15]*State v. Nelson*, 63 So.3d 1007 (La. 2011); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2011-KO-0180, 6/3/1; Copy of La. S. Ct. Writ Application, 2011-KO-0180, dated 1/18/11.

[16]St. Rec. Vol. 3 of 4, Motion to Correct Illegal Sentence, 7/12/12.

[17]St. Rec. Vol. 3 of 4, Uniform Application for Post-Conviction Relief, 7/12/12.

After receiving a response from the District Attorney, the Trial Court denied Nelson's application for post-conviction relief on August 24, 2012.[18]  The Court held that the ineffective assistance of counsel claims were conclusory, without merit under *Strickland v. Washington*, 446 U.S. 668 (1984), and otherwise repetitive of matters addressed pretrial by the Trial Court or on direct appeal by the Louisiana First Circuit.  The Court also determined that the claims arising from the Trial Court's denial of new counsel and the mistrial were repetitive of matters resolved on appeal.  The Court further found that the record showed that the witness at issue was sworn under oath.

Thereafter, on September 19, 2012, the Trial Court denied without stated reasons Nelson's counsel-filed motion to correct the sentence.[19]  On October 16, 2012, Nelson's counsel sought review of this order in the Louisiana First Circuit.[20]  After several extensions of time, counsel also filed a separate writ application on October 23, 2012, seeking review of the denial of the application for post-conviction relief.[21]

The Louisiana First Circuit denied both writ applications without stated reasons by separate orders issued December 17, 2012.[22]  The Louisiana Supreme Court, by separate orders issued on

---

[18]St. Rec. Vol. 3 of 4, Trial Court Order, 8/24/12; District Attorney's Answer, 7/31/12.

[19]St. Rec. Vol. 3 of 4, Trial Court Order, 9/19/12.

[20]St. Rec. Vol. 3 of 4, Copy of 1st Cir. Writ Application, 2012-KW-1742, dated 10/16/12.

[21]St. Rec. Vol. 3 of 4, Copy of 1st Cir. Writ Application, 2012-KW-1775, dated 10/23/12.

[22]St. Rec. Vol. 3 of 4, 1st Cir. Order, 2012-KW-1742, 12/17/12; 1st Cir. Order, 2012-KW-1775, 12/17/12.

June 21, 2013, also denied without stated reasons the related writ applications filed by Nelson's counsel with that court.[23]

## II.    **Federal Petition**

On July 4, 2013, Nelson, through private counsel, filed this federal petition for habeas corpus relief which asserts the following grounds for relief:[24] (1) Trial counsel was ineffective for failure to investigate Thomas's medical background and failure to adequately represent him during the habitual offender proceeding; (2) the Trial Court abused its discretion in refusing to appoint new counsel in violation of the Fifth, Sixth, and Fourteenth Amendments; (3) his Fifth and Fourteenth Amendments rights were violated by acceptance of testimony from an unsworn witness; (4) his Fifth and Fourteenth Amendments rights were violated and the Trial Court abused its discretion in failing to grant a mistrial; (5) his sentence was illegally enhanced in violation of the Fifth and Fourteenth Amendments; and (6) the life sentence is constitutionally excessive in violation of the Eighth and Fourteenth Amendments.

The State filed an answer and memorandum in opposition to Nelson's petition conceding that the petition was timely filed and that the claims were exhausted in the state courts.[25]  The State argues, however, that the claims are without merit, or fail to present a cognizable federal claim, and that the petition should be dismissed with prejudice.

---

[23]*State v. Nelson*, 118 So.3d 410 (La. 2013); *State v. Nelson*, 118 So.3d 411 (LA. 2013); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2013-KP-0163, 6/21/13; La. S. Ct. Order, 2013-OK-0164, 6/21/13; La. S. Ct. Writ Application, 13-KP-163, dated 1/16/13; La. S. Ct. Writ Application, 13-OK-164, 1/18/13 (postmarked 1/17/13).

[24]Rec. Doc. No. 3.

[25]Rec. Doc. Nos. 15, 16.

Nelson's counsel filed a reply to the State's opposition restating his position on the merits of the issues raised.[26]

### III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to this petition, which was filed in this court by counsel on July 4, 2013.  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record confirms that Nelson's petition is timely filed and the claims are exhausted.  The record also does not reflect that any of the claims are in procedural default.  The Court recognizes that, on post-conviction review, the state trial court refused to consider several of Nelson's claims because they had been addressed on direct appeal.  Under Louisiana law, La. Code Crim. P. art. 930.4(A) precludes post-conviction review of claims already "fully litigated" on direct appeal.  *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994).  This rule presumes that the claims have been fully reviewed by the state appellate court on direct appeal and by the Louisiana Supreme Court and need not be considered again on post-conviction application.  *Id.*  However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense,

---

[26]Rec. Doc. No. 20.

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

nor is it a decision on the merits." *Id*.  For this reason, the bar does not preclude habeas review of claims like Nelson's that were considered on direct appeal.  This court simply "look[s]-through" the ruling on collateral review and considers only the direct appeal proceeding.  *Id*., at 1582-83.  Thus, the Court will proceed to address the merits of Nelson's claims.

## IV.    <u>Standards of Review of the Merits</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court

decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White v. Woodall*, No. 12-794, 2014 WL 1612424, at *8 (U.S. Apr. 23, 2014); *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

**V.**     **Effective Assistance of Counsel (Claim No. 1)**

Nelson alleges that his trial counsel was ineffective where he failed to investigate Candie Thomas's medical background to use as impeachment evidence regarding her memory of the events and failed to adequately challenge the State's evidence during the habitual offender proceeding.

The State in response argues that, as found by the state courts, Nelson can not meet the standards set forth in *Strickland*, 466 U.S. at 668, and he is not entitled to relief.

A few weeks before trial, Nelson filed a motion seeking to waive his right to counsel and to have his appointed trial counsel dismissed from representing him in the case.[28] His trial counsel had been appointed to represent him after he complained of a conflict in the indigent defender's office where that office also represented Candie Thomas, who was also charged in connection with the same burglary.

Nelson contended that he had notified his appointed counsel about Thomas's mental health issues and requested that counsel contact Thomas's doctor to support the contention that Thomas's memory would have been impacted by her seizure disorder and the medications she was taking at the time.  Nelson argued that his counsel failed to contact the doctor to obtain his expert testimony. He also complained that his counsel did not file a motion to suppress Thomas's statements, failed to provide him with copies of the discovery provided by the State, and failed to contact witnesses and conduct an adequate pretrial investigation.

---

[28]St. Rec. Vol. 1 of 4, Motion for Ineffective Assistance of Counsel, 9/10/09.

The Trial Court held a full hearing on the motion at which Nelson was allowed to argue his points.[29] The Court denied the motion finding no conflict and no ill-practice in counsel's preparation for trial.

Nelson's private counsel later raised these arguments on post-conviction review.  He also complained of trial counsel's failure to adequately challenge the evidence used in the multiple offender proceedings.  The state trial court again denied relief finding that Nelson failed to meet either prong of the *Strickland* test.  This was the last reasoned opinion on the issue where the Louisiana First Circuit and the Louisiana Supreme Court denied relief without added reasons.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).  The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, is the appropriate standard for judging the performance of counsel.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya*

---

[29]St. Rec. Vol. 1 of 4, Hearing Transcript, 9/10/09.

*v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).   In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.   *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.   *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).   "The defendant must show that counsel's representation fell below an objective standard of reasonableness."   *Strickland*, 466 U.S. at 687-88.   The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.   *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).   The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.   *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).   "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."   *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689).   As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.   *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless

it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 131 S. Ct. at 792.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S. Ct. at 788.  The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a

general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.,* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

### A.   Investigation and Presentation of Thomas's Mental Health Issues

Nelson contends that his trial counsel failed to adequately investigate available defenses prior to trial. As a result, he contends that his counsel was ineffective.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." (citation omitted) *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir.2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*,

419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

In this case, Nelson's conclusory resolve is that counsel did not utilize discoverable information related to Thomas's medical condition and medication to challenge the reliability of her statements to police and her testimony at trial. The record demonstrates the factual error of this argument and supports the state courts' denial of relief.

On direct examination by the prosecution, Thomas testified regarding her mental health history, including her diagnosis with schizophrenia with paranoid manic and delusional episodes.[30] She also listed the anti-depressant medications she took to control her "mental issues."[31] She also testified that the medications did not effect her memory or make her drowsy, noting that she had been taking them since she was a teenager.[32] She also testified that the medications caused her to suffer with myoclonus epilepsy for which she also takes medication.[33] She indicated that she had a seizure on the morning of the burglary but it was resolved long before she went to her doctor's appointment.[34]

On cross-examination, Nelson's counsel questioned Thomas about her memory problems and the length of time she was impacted by the memory loss after a seizure.[35] He also asked her if Nelson's son, also named Michael, could have driven her to the medical building that day. She was

---

[30]St. Rec. Vol. 2 of 4, Trial Transcript, p. 306, 9/22/09.

[31]*Id.*, at 306.

[32]*Id.*

[33]*Id.*, at 307.

[34]*Id.*, at 307-08.

[35]*Id.*, at 317.

persistent that Nelson himself drove her that day.  Counsel continued to specifically question her about the loss of memory that occurs as a result of her seizures:[36]

> Q.   Now, you have a problem with your memory at times; is that correct?
>
> A.   The seizures.  The type of seizures I have sometimes tend to cause dementia for a short period after I have the seizures.
>
> Q.   You had a seizure on the day of this incident?
>
> A.   That morning.
>
> Q.   How does that memory lapse come about, is it immediately after the seizure or at some point?
>
> A.   I tend not to remember, you know, a good bit before the seizures and during the seizure and some times afterwards.  Depending on how quick I can get my sugar level back to normal.  Depends on how much quicker my mind goes back to normal.

Thomas also indicated that, in addition to her mental health medications, she was also on pain medication at the time because of shoulder surgery.[37]  Nelson's counsel questioned Thomas in great detail about the written statement she provided from her mental health doctor, Dr. Larceena, regarding her illnesses.  This is the same doctor Nelson complains his attorney did not utilize to discredit Thomas.

Nevertheless, Thomas verified that she suffers from episodes of delusions brought on by the schizophrenia, not the medication.[38]  She was taking two anti-psychotic medications, in addition to the four anti-depressants, to control that issue.[39]  Defense counsel also questioned Thomas with

---

[36] *Id.*

[37] *Id.*, at 318.

[38] *Id.*

[39] *Id.*, at 319.

regard to the accuracy of her recorded statements to the police and other aspects of her memory of the events that day.[40]

The record clearly shows that counsel had investigated and prepared himself with regard to Thomas's medical condition and memory issues. *See Bowers v. Quarterman*, 497 F.3d 459, 472 (5th Cir. 2007) (citing *Dees v. Caspiri*, 904 F.2d 452, 455 (8th Cir. 1990) ("Counsel had a duty to garner the expertise necessary to cross examine [the state's expert]."). Based on the record, it is reasonable to conclude that counsel strategically chose to undermine the State's evidence through cross-examination at trial rather than risk bringing in the doctor or other evidence that may have confirmed that Thomas could remember the events. Counsel's "'[f]ailure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (*quoting Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).

Furthermore, "[u]nless a crucial and important legal issue rests on the reliability of scientific evidence, . . . counsel is not constitutionally required to seek out a contradictory expert so long as the decision not to call an expert is informed and based on a strategic decision." *See Bowers*, 497 F.3d at 472. The decision not to call Dr. Larceena under the circumstances of this case was well within counsel's trial strategy discretion. *Dees*, 904 F.2d at 454-55. Counsel did not need to call the doctor to further demonstrate what Thomas readily admitted about her mental health issues and which were confirmed through Dr. Larceena's written statement. The jury heard ample evidence regarding Thomas's mental health issues including memory loss and the delusional disorder.

---

[40]*Id.*, at 320-22.

Counsel did not act unreasonably or prejudicially in presenting Thomas's mental health issues at trial through cross-examination. He has not shown that the state court's denial of relief was contrary to, or an unreasonable application of, *Strickland*.

### B.  Challenge to the Multiple Offender Evidence

Nelson acknowledges that he was procedurally unable to make a direct challenge to the sufficiency of the evidence in the multiple offender proceedings on state post-conviction review. He, nevertheless, bootstraps that challenge to his claim of ineffective assistance of counsel contending that trial counsel should not have allowed the state trial court to accept the State's evidence of the prior convictions listed in the multiple bill. In addressing his claim on habeas review, however, this federal court's focus is not on the sufficiency of the evidence and instead must be on whether the state courts properly applied or followed *Strickland* in determining whether counsel's performance was constitutional.

As an initial matter, Nelson's ineffective assistance of counsel argument is based on a significant error of fact. He was not sentenced as a ninth or tenth felony offender as he contends. He was adjudicated and sentenced as a fourth felony offender after the state trial court determined that he was proven to be the same person convicted in seven prior felony cases, specifically as follows:[41] (1) 9th Judicial District Court Case No. 269186, convicted and sentenced October 13, 2003, unauthorized use of a movable; (2) 22nd Judicial District Court No. 319244, convicted and sentenced June 20, 2000, introducing contraband into a penal institution; (3) 22nd Judicial District Court No. 319244, convicted and sentenced June 20, 2000, twenty-nine (29) counts of simple burglary; (4) 22nd Judicial District Court No. 319243, convicted and sentenced June 20, 2000, two

---

[41]St. Rec. Vol. 2 of 4, Sentencing Transcript, pp. 471-72, 12/10/09; St. Rec. Supp. Vol. 1 of 1, Exhibits from Multiple Bill Hearings.

counts of theft over $500; (5) 22nd Judicial District Court No. 260949, convicted May 1, 2000 and sentenced June 20, 2000, illegal possession of stolen property; (6) 22nd Judicial District Court No. 258770, convicted May 1, 2000, and sentenced June 20, 2000, three counts of simple burglary; and (7) 22nd Judicial District Court No. 170208, convicted and sentenced March 13, 1992, theft of property over $500.  As will be further discussed, these seven cases constituted at least four separate and cognizable convictions to be used in enhancing his sentence under Louisiana's habitual offender laws.

Also contrary to Nelson's arguments, his appointed trial counsel did challenge the evidence relied upon by the State.  Counsel filed an answer and motion seeking to quash the multiple bill based on numerous grounds, including the assertion that the convictions arose out of one criminal episode and that the prior conviction(s) resulted from the unknowing and involuntary waiver of rights.[42]  The state trial court denied the motion.[43]

Counsel also questioned the State's latent fingerprint expert, Deputy First Class Tommy Morse, to establish that he did not make a fingerprint comparison with the prints from the 9th Judicial District case and did not use computerized assistance to make his comparisons in the other cases.[44]

During the hearing, counsel also objected to the use the convictions in Case Nos. 258770, 258771, 319243, and 319244, because the records did not establish that the guilty pleas were voluntarily and knowingly made where the court in each case did not confer with Nelson's counsel

---

[42]St. Rec. Vol. 1 of 4, Answer and Motion to Quash, 10/6/09.

[43]*Id.*, at 474.

[44]St. Rec. Vol. 2 of 4, Hearing Transcript, p. 456, 11/4/09.

before accepting those pleas.[45]  Counsel also advised the court that Nelson objected to the State being allowed to choose the cases to be included in the multiple bill rather than limiting the prosecutor to the most recent cases.[46]  The Court noted the objections and commented that they were baseless.[47]

Counsel re-urged the objection to the use of the June 20, 2000 multiple convictions under Case No. 319244 as separate convictions rather than as one.[48]  The Court noted the objection and the related extraneous comments made by Nelson himself.[49]

Based on the foregoing, counsel did not sit "idly" by and allow the State or the state trial court to rely on unchallenged evidence of the prior offenses.  The fact that counsel's efforts were not successful does not render his performance ineffective.  *Strickland*, 466 U.S. at 689.

Further, in his legally unsupported conjecture made "to the best of Petitioner's knowledge," Nelson suggests that the date of sentencing controls the use of prior convictions.  Louisiana law, more precedential than "Petitioner's knowledge," has long recognized that, as used in the habitual offender adjudications for purposes of the "one day, one conviction" doctrine (now only applicable to convictions prior to October 13, 2004) the determinative date is the date the verdict is entered not the date of sentencing.  *See State v. Sherer*, 411 So.2d 1050, 1057 (La. 1982) ("[C]onvictions on more than one count entered on the same date should be treated as one conviction." (emphasis added, citations omitted)), *overruled on other grounds, State v. Shaw*, 969 So.2d 1233 (La. 2007);

---

[45]*Id.*, at 467-68.

[46]*Id.*, at 469.

[47]*Id.*

[48]*Id.*, at 473.

[49]*Id.*, at 474.

*State v. Nevers*, 621 So.2d 1108, 1117 (La. App. 1st Cir. 1993) (pleas of guilty received on the same day under different case numbers for different criminal events treated as one conviction under the habitual offender statute); *accord State v. Johnson*, 884 So.2d 568, 569-70 (La. 2004); *State v. Butler*, 894 So.2d 415, 426-27 (La. App. 4th Cir. 2005). Thus, there is no legal support for Nelson's contention that he did not qualify as a fourth offender. A proper application of state law would show that the burglary of this automobile would count as at least his fifth felony conviction when applying the one day, one conviction rule. Trial counsel's refusal or failure to adhere to or urge Nelson's erroneous version of the law in that regard did not amount to deficient performance.

Nelson also is incorrect in his representation that trial counsel should not have allowed the Trial Court to rely on convictions obtained while he was not represented by counsel and where his identity was based on only his name and birthday. First, contrary to the Nelson's suggestion, the documents used at the multiple bill hearing are a part of the state court records and would be available for his counsel to peruse with due diligence. Further, State Exhibit 6 produced at the multiple bill hearing contained the certified records from Nelson's conviction in Case No. 170208.[50] The opening lines of the March 13, 1992, minute entry evincing the plea clearly reflects that Nelson was present before the Court with his counsel. Again, Nelson's argument is factually baseless.

Next, while citing no law and relying on colloquial sources such as Wikipedia.org, Nelson argues that trial counsel should not have allowed the prosecutor to rely on a birth date to establish his identity. However, Louisiana <u>law</u>, a proper legal source, the State can prove identity of a multiple offender by using "[v]arious methods of proof . . . including testimony of witnesses, expert opinion as to fingerprints, and photographs contained in duly authenticated records" *State v. Brown*,

---

[50]St. Rec. Suppl. Vol. 1 of 1, Minute Entry (170208), 3/13/92.

82 So.3d 1232, 1234 (La. 2012).  The state courts have also recognized that identical driver's license number, sex, race, and date of birth in conviction records are sufficient evidence of identity.  *State v. Payton*, 810 So.2d 1127, 1130 (La. 2002); *see also*, *State v. White*, 130 So.2d 298 (La. 2013).  The Louisiana courts also have held that documents containing a defendant's "name, race, sex, date of birth, social security number, state prisoner number, Federal Bureau of Investigation (FBI) number, state identification number, and signature of defendant, and master prison record list[ing] defendant's sentencing date, his crime, his term of sentence, and court in which he had been convicted," to be adequate proof that a defendant is the same person as the one previously convicted. *State v. Noel*, 734 So.2d 168, 170 (La. App. 5th Cir. 1999).  The record clearly indicates that the State provided similar evidence (other than fingerprints) at the multiple bill hearing to establish Nelson's identity related to the prior conviction.  It therefore was reasonable for counsel not to object to the identification evidence where the evidence was in fact adequate under Louisiana law. Nelson has not established a deficient action by counsel.

For all of the foregoing reasons, the state courts' denial of relief on the issue of ineffective assistance of counsel was not contrary to, or an unreasonable application of, *Strickland*.  Nelson is not entitled to relief on any facet of his claim.

## VI.    State Trial Court's Failure to Appoint New Counsel (Claim No. 2)

Nelson next argues that the Trial Court abused its discretion in refusing to appoint new counsel in violation of the Fifth, Sixth, and Fourteenth Amendments.  He argues that his relationship with counsel deteriorated to the point of creating a conflict that entitled him to new counsel.  The State argues that the claim is meritless for many of the same reasons addressed with regard to Nelson's ineffective assistance of counsel claim addressed above.

As already outlined, Nelson filed a motion seeking to waive his right to counsel and to have his appointed trial counsel dismissed from representing him in the case.[51]  The motion, which was heard with oral argument, was based in relevant part on Nelson's contention that counsel was ignoring his request to contact Thomas's doctor to build a defense on her memory loss as a result of the seizure disorder and the medications.[52]  Nelson also argued that counsel was not communicating with him, providing him with copies of the State's discovery materials, or requiring that he be present at every meeting with the Trial Court.  Ultimately, Nelson complained that his appointed trial counsel was making decisions without him and was not allowing him to call the shots in his own defense.

The Trial Court denied the motion finding that Nelson's appointed counsel, who was an experienced trial attorney, was engaged in the preparation of the case for trial and who would be responsive to Nelson if Nelson would heed counsel's advice.  When Nelson's private counsel raised the matter on post-conviction review, the claim was rejected as repetitive of the pretrial motion.  The higher state courts also denied relief without further reasons.  *See Ylst*.

Although Nelson invokes the Fifth, Sixth and Fourteenth Amendments, his arguments are limited to those related to the state trial court's denial of his request for conflict free counsel under the Sixth Amendment.   A determination that an actual conflict did not exist in counsel's representation is a mixed question of law and fact.  *United States v. Hernandez*, 690 F.3d 613, 619 (5th Cir. 2012).  Under the applicable standard of review, this court therefore must determine if the

---

[51]St. Rec. Vol. 1 of 4, Motion for Ineffective Assistance of Counsel, 9/10/09.

[52]St. Rec. Vol. 1 of 4, Hearing Transcript, 9/10/09.

state court's decision is contrary to, or involved an unreasonable application, of Supreme Court precedent.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The wrongful deprivation of choice of counsel is a "structural error" that "pervades the entire trial." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). As the Supreme Court has recently recognized, "[d]ifferent lawyers do all kinds of things differently, sometimes 'affect[ing] whether and on what terms the defendant . . . plea bargains, or decides instead to go to trial' - and if the latter, possibly affecting whether she gets convicted or what sentence she receives. So for defendants . . . having the ability to retain the 'counsel [they] believe[ ] to be best' - and who might in fact be superior to any existing alternatives - matters profoundly." (footnote and citations omitted) *Kaley v. United States*, __ U.S. __, 134 S. Ct. 1090, 1102-03 (2014).

However, the right to counsel of choice is not absolute. *Gonzalez-Lopez*, 548 U.S. at 144. The Supreme Court recognizes that the right to choose counsel extends to a defendant who does <u>not</u> require appointed counsel. *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Gonzalez-Lopez*, 548 U.S. at 144. "[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Gonzalez-Lopez*, 548 U.S. at 144 (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-625 (1989)).

In this case, Nelson at the time had appointed counsel and would have required appointment of counsel if the motion had been granted. There is nothing in the record to suggest that at that time

he could have afforded his own counsel or that he advised the state court that he was willing to do so.  He therefore had no absolute right to choose his own or different counsel.

Nevertheless, the Court will consider the propriety of the state trial court's ruling in the context of the alleged conflict.  When a defendant alleges that he is entitled to new counsel because of an actual conflict of interest, prejudice is presumed under the Sixth Amendment.  *Strickland*, 466 U.S. at 692.  "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."  *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

However, the Supreme Court has addressed the presumption under *Strickland* for cases of actual conflicts of interest only for conflicts of interest that involve multiple or concurrent representation by counsel.  *See Mickens*, 535 U.S. at 176.  The Supreme Court has not specifically extended this presumption to <u>any</u> other conflict.  *Id*.; *Beets v. Scott*, 65 F.3d 1258, 1265-66 (5th Cir. 1999) (en banc).  Thus, the Supreme Court has not established a standard other than that under *Strickland* for assessing the type of relationship-conflict alleged by Nelson.

As a general rule, disagreements between a defendant and his trial counsel do not implicate the Sixth Amendment which guarantees effective assistance of counsel, not necessarily a "meaningful relationship" between an accused and his counsel.  *Morris v. Slappy*, 461 U.S. 1, 14 (1983).  As a result, there is no clearly established federal law that would deem this type of antagonistic relationship between an attorney and client to be an actual conflict under the Sixth Amendment or one that would have required the state trial court to appoint new counsel.  *Accord United States v. Solina*, 733 F.2d 1208, 1211 (7th Cir. 1984) (antagonism between attorney and client did not amount to a conflict of interest).

Nelson has not established a constitutional error by the state court in failing to appoint different counsel when he declared that his relationship with counsel was deteriorating.  The record demonstrates that the state trial court determined that counsel was properly preparing for trial and as an experienced attorney, was competently representing Nelson in the proceedings.  Based on the Court's review of the record, and the foregoing discussion under *Strickland*, the state trial court's findings are entitled to the deference due under federal habeas law.  The state trial court's findings also were consistent with the considerations required of it under *Strickland* to determine if Nelson was receiving effective assistance.

Nelson has not demonstrated that the state trial court acted contrary to any federal law in denying his request or that the denial of post-conviction relief on this issue was contrary to, or an unreasonable application of, Supreme Court law.

## VII.   Admission of Testimony from an Unsworn Witness (Claim No. 3)

Nelson contends that his Fifth and Fourteenth Amendment rights were violated when the jury was allowed to hear the testimony of Detective Ralph Morel about Nelson's inculpatory statements to police without the Detective having first been sworn under oath.  The State contends that, although the court reporter did not include a notation in the transcript, the trial minutes reflect that Morel was sworn prior to taking the stand.  The State also argues that Morel was sworn earlier in the proceedings and remained under oath when he testified.

The state trial court denied post-conviction relief on this issue finding that the record showed that Morel was sworn under oath.  The Louisiana First Circuit and the Louisiana Supreme Court also denied relief without stated reasons.

26

Nelson asserts that the state court erred under state law in failing to swear Detective Morel before his trial testimony. He argues this violated his rights under the Fifth and Fourteenth Amendments to a fundamentally fair trial.

Federal habeas corpus review is, of course, limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Jernigan*, 980 F.2d at 298; *see Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law). Therefore, federal courts do not sit to review the propriety of state court errors, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Lisenba v. People of the St. of Cal.*, 314 U.S. 219, 236-37 (1941); *Swarthout*, 131 S. Ct. at 861-62; *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right). To the extent Nelson bases his claim on Louisiana law, he has failed to state a cognizable claim for this Court to review.

To the extent Nelson also embraces general references to Due Process and fundamental fairness under the Fifth and Fourteenth Amendments, his claim also does not support a basis for federal habeas relief. The Court first must recognize that the United States Supreme Court has held that it is the Sixth Amendment's Confrontation Clause which guarantees that an accused is "to be confronted with the witnesses against him" and which "insures that the witness will give his statements under oath - thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury." *Maryland v. Craig*, 497 U.S. 836, 845-46 (1990) (internal quotation marks and citation omitted). Nelson has not raised a Sixth Amendment claim

on this issue in the state courts or in this federal petition. Nelson is represented by counsel before this Court and the Court does not broadly construe counsel-filed pleadings. The Court therefore will limit its discussion to the fairness considerations addressed under the general right to Due Process which is the only exhausted federal argument raised by Nelson in this Court.

The question of fundamental fairness at trial under the Due Process Clause presents a mixed question of law and fact. *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000). Under the applicable AEDPA standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

As an initial matter, the record confirms the findings of the state courts that Detective Morel was sworn on the record before he testified at trial. The record shows that Detective Morel was called to testify at the motion hearing held just prior to jury selection on September 21, 2009.[53] The transcript contains language that Morel "AFTER HAVING BEEN DULY SWORN WAS EXAMINED AND TESTIFIED AS FOLLOWS."[54] When Morel completed his testimony at the hearing, he was not released by the attorneys or the Court.[55] Instead, shortly thereafter, the Court proceeded to trial and jury selection. As trial continued on September 22, 2009, Detective Morel was called back to the stand to testify before the jury.[56] The transcript does not contain language indicated that he was sworn in again. However, there is no requirement in federal law that the oath administered to a trial witnesses be transcribed verbatim in the record. *Timmons v. Lee*, No. 10-CV-

---

[53]St. Rec. Vol. 1 of 4, Trial Transcript, p. 145, 9/21/09.

[54]*Id*.

[55]*Id*., p. 179.

[56]St. Rec. Vol. 2 of 4, Trial Transcript, p. 358, 9/22/09.

1155, 2010 WL 3813963, at *12 (E.D.N.Y. Sep. 23, 2010).   Nevertheless, the trial minutes, however, indicate that Detective Morel was sworn prior to testifying.[57]

The state courts accepted the record as a whole in determining that Detective Morel was sworn to testify under oath.   Nelson has not presented anything to establish this to be an unreasonable factual finding from the reading of the record.   Furthermore, even if Morel should have been and was not sworn a second time, Nelson has not established a Due Process violation under the parameters set forth in this Circuit:

> The due process inquiry must consider the significance of the challenged evidence "in the context of the entire trial."   We have held that the Due Process Clause does not afford relief where the challenged evidence was not the principal focus at trial and the errors were not "'so pronounced and persistent that it permeates the entire atmosphere of the trial.'"   This is a high hurdle, even without AEDPA's added level of deference.

(footnotes omitted) *Gonzales v. Thaler*, 643 F.3d 425, 431 (5th Cir. 2011).

Nelson has not challenged the veracity or truthfulness of Detective Morel's testimony to reflect some unfairness before the jury.   *Accord Evans v. Rollins*, 935 F.2d 1286, 1991 WL 106151, at *1 (4th Cir. Jun. 20, 1991) (Table, Text in Westlaw).   He has not shown that Detective Morel's testimony would have been any different had he been sworn (assuming he was not) or that the testimony would have been stricken if an objection would have been made.   *Accord Gutierrez v. Scott*, 56 F.3d 1386, 1995 WL 337923, at *2 (5th Cir. May 24, 1995) (Table, Text in Westlaw).   Indeed, the Detective's testimony was corroborated  by, if not cumulative to, testimony presented by the other witnesses.

The other "damning" evidence, as Nelson refers to it, were the inculpatory statements made by Nelson himself.   Detective Morel, however, was not the first witness to mention Nelson's self-

---

[57]St. Rec. Vol. 1 of 4, Trial Minutes, 9/22/09.

condemning statements.  Officer Bryan Nicaud, who testified before Detective Morel, was also present during the interviews of Nelson.[58]  In fact, Officer Nicaud testified that he was the first to receive a confession from Nelson during a break in the interview when Detective Morel was not present:[59]

> Q.    Did he make any statements to you about the quote, "Northshore" break in, unquote?
>
> A.    Yes.  That he admitted that's the only one he did that we know about, or that I perceived as him saying that's the only one you got me with.

Officer Nicaud also indicated that, after this, Nelson made corroborating inculpatory remarks to the officers on the recorded interview tape.[60]  At that time, rather than review the tapes with Officer Nicaud, the State indicated its decision to "cover that with the next witness," who was Detective Morel.[61]  Thus, even without Detective Morel's testimony, the jury heard Officer Nicaud's testimony regarding Nelson's first inculpatory statement.  Furthermore, even if Detective Morel's testimony were discounted, the video tapes of the interviews could have been introduced by the State through Officer Nicaud who was also present.

In addition, the jury had before it other testimony given by Candie Thomas.  Her testimony about the events surrounding the burglary corroborated and confirmed the information Nelson himself gave to the police during the interviews.

Thus, with the other "damning" testimonial and physical evidence presented to the jury, Nelson has not established that Detective Morel's testimony, assuming it was not under oath,

---

[58]St. Rec. Vol. 2 of 4, Trial Transcript, p. 341, 9/22/09.

[59]*Id.*, at 342.

[60]*Id.*, at 343.

[61]*Id.*

30

rendered his trial fundamentally unfair.  Denial of relief on this issue was not contrary to, or an

unreasonable application of, federal law.  Nelson is not entitled to relief on this issue.

**VIII.   <u>Trial Court's Failure to Grant a Mistrial (Claim No. 4)</u>**

Nelson claims that his Fifth and Fourteenth Amendment rights were violated because the

Trial Court denied the defense's motion for mistrial based on the interview videos shown to the jury.

Specifically, Nelson points to the fact that the video shows him in a prison jumpsuit and included

two references to his criminal history.

Prior to the showing of the video of Nelson's interview, his counsel raised several objections

during a bench conference with regard to the video.  Among those first objections was that the jury

"not view the video but instead in the alternative listen to the audio, reason being my client is in

custody wearing the jail house fatigues."[62]  The Trial Court did not find that the fact that he was

detained in jail or in "jail garb" on the type of charge he faced would surprise the jury or cause

prejudice.  The Trial Court instead offered to charge the jury on the issue, which it did as follows:[63]

> Members of the jury, there will be a video played, of a portion of the
> interview that was conducted in the Slidell jail.  The fact that the defendant is in
> garb, you should have no inference from that.  The fact that he was in at that time
> should have no inference concerning guilt in this case or any case.

After the showing of one portion of the video, counsel noted a different objection to the

video where Nelson made a statement to the officers that he "hasn't done anything in the last

eighteen (18) months," which counsel thought was a reference to the time he was out on parole or

probation, although neither phrase was mentioned.[64]  The Trial Court noted that the statement did

---

[62]St. Rec. Vol. 2 of 4, Trial Transcript, p. 367, 9/22/09.

[63]*Id.*, at 368.

[64]*Id.*, at 370.

not refer to "anything."  After this comment, Nelson's counsel moved for a mistrial, which the trial court denied.[65]

After another portion of the tape was shown, Nelson's counsel objected at the bench to the mention that his client was "backing up" six years.  Essentially, the prosecutor conceded that he did not mean to play that portion of the tape and that the phrase did not disclose anything about Nelson's criminal past.  The Trial Court advised the State that the tape was becoming cumulative and he would send the jury home if the State erred again.[66]  Nothing further was argued on that portion of the statement.

Nelson's counsel raised the denial of the mistrial on direct appeal, challenging both references to his criminal history.  The Louisiana First Circuit found that, under Louisiana law, the recorded statements fell within the court's discretionary determination rather than the requirement that a mistrial be granted.  The Court also noted that the Trial Court was not required to admonish the jury since the defense did not request an admonishment on this issue.  The Court further held that any error in denying the motion was harmless, because the verdict was unattributable to the error, if any.  In doing so, the Court referenced the confessions and the eyewitness testimony of Thomas and Delahoussey.

On post-conviction review, Nelson's counsel again raised the abuse of discretion by the Trial Court in denying the motion for a mistrial, this time referencing the prison garb in addition to the two references to his criminal history.  The Trial Court denied relief finding the claim repetitive of the issue addressed on appeal.

---

[65]*Id.*

[66]*Id.*, at 371-72.

Nelson's arguments that the Trial Court erred in failing to grant a mistrial under state law do not involve consideration of any questions of federal or constitutional law, and review of such claims is not proper on habeas review.  *See Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (the failure to grant a mistrial is a matter of state law and not one of a constitutional dimension); *Haygood v. Quarterman*, 239 F. App'x 39, 42 (5th Cir. Jun.14, 2007) (state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right) (citing *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.1991)).  As the Court has already discussed, federal habeas corpus review instead is limited to questions of federal constitutional dimension, and federal courts do not review alleged errors in the application of state law.  *See Swarthout*, 131 S. Ct. at 861.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68; *see also Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).  Any alleged impropriety based on state law do not warrant federal habeas review or relief.

As in his prior claims, Nelson has also couched this claim in terms of the Fifth and Fourteenth Amendment rights to Due Process.  The question of fundamental fairness at trial under the Due Process Clause presents a mixed question of law and fact.  *Wilkerson*, 233 F.3d at 890.  Under the applicable AEDPA standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

Nelson directs his first complaint to the fact that he was in a prison uniform in the interview video that was shown to the jury.  The Court first notes that there is no *per se* rule that a defendant can never be before a jury in prison attire.  However, a defendant cannot be compelled to wear prison clothes during his trial in the presence of the jury where the clothing would cause the jury to base its decision on factors other than the probative evidence.  *Estelle v. Williams*, 425 U.S. 501 (1976); *Johnson v. Cain*, No. 05-1482, 2006 WL 2038163, at *3 (E.D. La. Jul. 18, 2006) (Berrigan, J.).  On collateral review of a state court conviction, federal courts will only grant relief if an alleged error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)).

In *Estelle*, the Supreme Court found that prison clothes on a defendant in a jury trial could be problematic.  "[T]he constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment."  *Estelle*, 425 U.S. at 504-505.  The Court recognized that such a "constant reminder" could constitute harmful constitutional error sufficient to justify a new trial.  *Estelle*, 425 U.S. at 506-509.

In this case, however, Nelson has not presented the kind of "constant reminder" scenario addressed in *Estelle* that would have rendered his trial fundamentally unfair.  The jury saw a limited portion of the 2008 interview tape, which his own counsel described as grainy, blurred and unfocused.  The jury never saw Nelson in person in the courtroom wearing prison garb where the Supreme Court precedent might presume some prejudice.  *Accord Kearns v. Hoke*, No. 09cv156, 2011 WL 3664558, at *8 (N.D. W. Va. Aug. 19, 2011), *appeal dism'd*, 464 F. App'x 110 (4th Cir. 2012), *cert. denied*, __ U.S. __, 132 S. Ct. 2743 (2012).  On the contrary, the jury was not constantly

34

reminded that Nelson was in prison when he made the statements nor is there any indication that the jury knew that he was in prison at the time of his trial.

Not only was the jury's viewing of the tape limited in time, but it was also cumulative of other testimony indicating that Nelson and Thomas were in custody at the time of the interviews. *Accord*, *Anderson v. Secretary of Dep't of Corr.*, 462 F.3d 1319, 1328-29 (11th Cir. 2006).  More importantly, the Trial Court specifically admonished the jury that the fact that he was in jail <u>at the time of the interview</u> was not an inference of his guilt.  *See Kearns*, 2011 WL 3664558, at *8.  The Court further notes that the other overriding evidence of his guilt places great doubt that the limited viewing had no effect on the verdict.

A similar conclusion is reached with regard to the oblique references on the tape which Nelson attributes to his criminal history.  The first reference was indicated by his counsel in a bench conference as follows:[67] "There is a portion in this tape where he makes a statement he hasn't done anything in the last eighteen (18) months the time he was out on parole."  In spite of counsel's statement, the Trial Court found that Nelson said eighteen months but made no reference tying it to anything, including parole or prison.  Nelson does not contest that the reference made no mention of his criminal past, prior incarcerations, or a parole term.  As determined by the state courts, the record does not show that the statement was actually a reference to his criminal history or that the jury considered that reference in reaching its verdict.

Even more obscure is the next reference to which Nelson points where, according to trial counsel at the bench conference, the tape referenced "backing six years."[68]  Apparently, Nelson's

---

[67]St. Rec. Vol. 2 of 4, Trial Transcript, p. 370, 9/22/09.

[68]*Id.*, at 371.

trial counsel believed this to be a reference to parole or probation, although neither was mentioned in connection with the naked phrase.  Nelson again does not contest that the reference made no specific mention of his criminal past, prior incarcerations, or a parole term.  As determined by the state courts, the record does not show that the jury understood this jargon to be a  reference to Nelson's criminal history or that the jury considered the reference in reaching its verdict.  *See Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996) (a petitioner is denied a fair trial only if the error alleged had a substantial and injurious effect or influence in determining the jury's verdict).

In light of the evidence of Nelson's guilt, including his own incriminating statements, the Court does not find that Nelson was denied a fair trial under the Supreme Court precedent addressed herein.  The denial of relief on this issue was neither contrary to nor an unreasonable application of Supreme Court law.  Nelson is not entitled to relief on this issue.

## IX.   Illegally Enhanced and Excessive Sentence (Claim Nos. 5, 6)

Nelson argues, as he did in his state court motion to correct his sentence, that his sentence was illegally enhanced under Louisiana habitual offender laws where the state trial court misconstrued the evidence or misapplied Louisiana law in considering the proof presented by the State.  The motion and subsequent review was denied by the state courts at each level without stated reasons.

Nelson also alleges, as he did in his direct appeal, that his life sentence although statutorily appropriate, is "constitutionally excessive" where the evidence was insufficient to prove his status and where he was a non-violent criminal.  The Louisiana First Circuit denied relief on this issue finding that Nelson failed to prove a basis for the state trial court to deviate from the statutory sentence.

To the extent Nelson challenges the multiple offender proceedings under state law, his claim is not reviewable under federal habeas corpus. *Joseph v. Butler*, 838 F.2d 786, 789 n.2 (5th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). As addressed previously, a federal court's habeas review hinges upon whether a criminal proceeding violated a defendant's federal constitutional rights such that the violation rendered the criminal proceeding fundamentally unfair under Due Process considerations. *Lisenba*, 314 U.S. at 236-37; *Peters*, 942 F.2d at 940 (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right). State enhancement proceedings, however, are not determinative of guilt or innocence and do not offer the accused the full range of Due Process and other constitutional rights normally attendant to such adjudications. *Buckley v. Butler*, 825 F.2d 895, 902-03 (5th Cir. 1987). With regard to sentencing schemes, "[t]he Due Process Clause does not, . . . require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused." *Parke v. Raley*, 506 U.S. 20, 32 (1992) (quoting *Medina v. California*, 505 U.S. 437, 451 (1992)). Nelson's challenge to the habitual offender sentencing proceedings, including the evidence relied upon by the State and the state courts is addressed under the Due Process Clause as limited by the foregoing precedent.

As discussed above in connection with Nelson's ineffective assistance of counsel claim, he was adjudicated and sentenced as a <u>fourth</u> felony offender based on seven prior felony cases recognized by the Trial Court.[69] Louisiana law requires application of the "one day, one conviction" doctrine relied upon by Nelson and which is applicable to his convictions entered prior to October

---

[69] St. Rec. Vol. 2 of 4, Sentencing Transcript, pp. 471-72, 12/10/09; St. Rec. Suppl. Vol. 1 of 1, Exhibits from Multiple Bill Hearings.

13, 2004.  Applying the law, the record confirms that Nelson was a fourth felony offender before the conviction in the instant case.

Specifically, the first of those convictions was in Case No. 170208 entered May 13, 1992. The second conviction arises from those entered on May 1, 2000, in Case Nos. 258770 and 260949. The third conviction is comprised of the three verdicts entered June 20, 2000 in Case Nos. 319243 and 319244.  The fourth conviction was entered on October 13, 2003, in Case No. 269186.  Thus, the conviction in the instant case, entered by jury verdict on September 22, 2009, actually could have been considered Nelson's fifth felony conviction in the Louisiana courts.  Also as previously discussed, Nelson has failed to demonstrate an error in the state courts' reliance on the evidence used by the State to prove those prior convictions.  As a result, he has failed to demonstrate a due process violation arising from his adjudication as a fourth felony offender.

Likewise, his claim of excessive sentence also fails under federal habeas review.  Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  *Haynes*, 825 F.2d at 923-24; *Turner v. Cain*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).  As here, if a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense.  *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983).

"[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense

in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). When a habeas petitioner has been sentenced under a habitual offender statute, a federal court must consider "the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses." *McGruder*, 954 F.2d at 316.

As resolved by the Louisiana First Circuit, at the time of his crime and conviction, La. Rev. Stat. Ann. § 15:529.1(A)(1)(c)(ii) allowed for a life term to be imposed on a fourth or higher felony offender like Nelson:

> A.(1)   Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows . . .
>> (c)      If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then [. . .]
>> (ii)     If the fourth felony and two of the prior felonies are . . . punishable by imprisonment for twelve years or more . . . the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

(emphasis added).

Nelson's prior simple burglary convictions were punishable with sentences of twelve years or more. His record considered as a whole under Louisiana law at the time, Nelson's fourth or subsequent felony was subject to the imposition of the life sentence with benefit of parole, probation, or suspension of sentence. His sentence was clearly within the statutory terms.

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *Ewing v. California*, 528 U.S. 11, 23 (2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality.

*Id.*, 538 U.S. at 30 (quoting *Harmelin*, 501 U.S. at 1005). As noted above, that disproportionality is judged by whether similar sentences have been imposed for the same offense. *Smallwood*, 73 F.3d at 1346-47.

At the time of Nelson's most recent crime and conviction, his burglary of an automobile conviction was punishable with a fine of not more than $2000 and/or imprisonment with or without hard labor for not more than twelve years. La. Rev. Stat. Ann. § 14:62(B). As noted above, the enhancement under Louisiana's habitual offender laws increased his sentencing exposure to not less than 20 years nor more than natural life. La. Rev. Stat. Ann. § 15:529.1(4)(a). Louisiana courts consistently impose the life sentence to fourth or subsequent offenders similarly situated. *See*, *e.g.*, *State v. Lindsey*, 770 So.2d 339, 343 (La. 2000) (fourth felony offender sentenced to life when prior convictions were not crimes of violence); *State v. Jones*, 761 So.2d 596 (La. App. 5th Cir. 2010) (life for fourth offense for possession of a stolen car, with prior convictions for theft, possession of a weapon, and manslaughter); *State v. Mitchell*, 969 So.2d 800 (La. App. 2d Cir. 2007) (life for fourth or subsequent offense for obscenity with intent prior convictions for simple burglary, aggravated burglary, aggravate rape of a minor, and unauthorized entry into a place of business); *State v. Windham*, 748 So.2d 1220 (La. App. 5th Cir. 1999) (life fourth or subsequent offense for attempted simple burglary with priors including theft, simple burglary, and armed robbery).

Nothing Nelson has argued distinguishes his situation as an exception to the cases cited above in which a life sentence was imposed. The imposition of a life sentence upon Nelson as a fourth or subsequent offender was not so extreme that it violated the Eighth or Fourteenth Amendments.

For these reasons, the state courts' findings that Nelson's adjudication was appropriate and his sentence was not excessive were not contrary to established Supreme Court case law, nor was it an unreasonable application of that precedent.  Nelson is not entitled to relief on these issues.

## X.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Michael Scott Nelson's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[70]

New Orleans, Louisiana, this 2nd day of May, 2014.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[70]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.